The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | JO ELLEN PETERS and KEN LANE, on
behalf of themselves and all others similarly
11 | situated,

12 |                              Plaintiffs,

13 |              vs.

14 | AMAZON SERVICES LLC,

15 |                              Defendant

16

| )
| )
| )
| )
| )
| )
| )
| )
| )
| )
| )
| )

CASE NO. C13-0480-MJP

**AMAZON SERVICES LLC'S
MOTION TO COMPEL
ARBITRATION**

**NOTE ON MOTION CALENDAR:
June 7, 2013**

17

18

19

20

21

22

23

24

25

26

27

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................................. 1

    A.   Sellers on Amazon.com. ........................................................................... 1

    B.   Plaintiffs' Amazon Seller Accounts and Termination of Their Accounts. ........... 3

        1.   Ms. Peters' Seller Account. ............................................................. 3

        2.   Mr. Lane's Seller Account. .............................................................. 4

    C.   Plaintiffs' Applicable Agreements. .......................................................... 6

        1.   Ms. Peters Accepted Amazon's Arbitration Agreement. ............................ 7

        2.   Mr. Lane Repeatedly Accepted Amazon's Arbitration Agreement. ............ 8

    D.   Plaintiffs' Claims. .................................................................................. 11

III.  ARGUMENT .................................................................................................... 12

    A.   Plaintiffs Agreed to Arbitrate Their Claims. ......................................... 14

    B.   Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement. ........... 16

    C.   The Arbitration Agreement and Class Action Waiver Are Enforceable
        Under the FAA and State Law. ............................................................... 17

    D.   The Court Should Compel Arbitration and Stay This Action. ................. 20

IV.   CONCLUSION ................................................................................................ 21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

FEDERAL CASES

4

*Adams v. AT&T Mobility, LLC*,

5
   816 F. Supp. 2d 1077 (W.D. Wash. 2011) ........................................................ 18

6

*Amazon.com, Inc. v. Powers*,

7
   2012 2012 WL 6726538 (W.D. Wash. Dec. 27, 2012) .................................... 14

8

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011).........................................12, 13, 17, 18, 19, 20

9

10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986).......................................................................... 17

11

*Bischoff v. DirecTV, Inc.*,

12
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) .......................................... 16

13

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) .............................................................. 16

14

*Carnival Cruise Lines, Inc. v. Shute*,

15
   499 U.S. 585 (1991)........................................................................ 19

16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

17
   207 F.3d 1126 (9th Cir. 2000) ................................................... 14, 16

18

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012)................................................................ 13, 17

19

20

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) ................................................... 13, 18

21

*Coppock v. Citigroup, Inc.*,

22
   2013 WL 1192632 (W.D. Wash. March 22, 2013) ........................ 18

23

*Crewe v. Rich Dad Educ., LLC*,
   2012 WL 3240185 (S.D.N.Y. Aug. 3, 2012)................................. 18

24

*Emilio v. Sprint Spectrum L.P.*,

25
   2012 WL 917535 (S.D.N.Y. Mar. 16, 2012)................................. 18

26

*Feldman v. Google, Inc.*,

27
   513 F. Supp. 2d 229 (E.D. Pa. 2007)............................................ 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)................................................................................14

*Forrest v. Verizon Commc'ns, Inc.*,
   805 A.2d 1007 (D.C. 2002) ...............................................................15

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)..............................................................................12

*Gray v. Suttell & Assocs.*,
   2012 WL 1951657 (E.D. Wash. Mar. 19, 2012) ................................18

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000)..............................................................................18

*Green v. W.R.M. & Assoc., Ltd.*,
   174 F. Supp. 2d 459 (N.D. Miss. 2001)..............................................16

*Hauenstein v. Softwrap Ltd.*,
   2007 WL 2404624 (W.D. Wash. Aug. 17, 2007).........................14, 15, 19, 20

*Huff v. Liberty League Int'l, LLC*,
   2009 WL 1033788 (C.D. Cal. Apr., 4, 2009) ....................................15

*Kilgore v. Keybank, Nat'l Ass'n*,
   2013 WL 1458876 (9th Cir. Apr. 11, 2013) .................................13, 14

*KPMG LLP v. Cocchi*,
   132 S. Ct. 23 (2011)............................................................................12

*LaVoice v. UBS Fin. Servs.*,
   2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ......................................18

*Marmet Health Care Ctr., Inc. v. Brown*,
   132 S. Ct. 1201 (2012) (per curiam)..............................................13, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)............................................................................13, 17

*Preston v. Ferrer*,
   552 U.S. 346 (2008)............................................................................13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)............................................................................17

*R Vallejo v. Garda CL Sw., Inc.*,
   2013 WL 391163 (S.D. Tex. Jan. 30, 2013) ......................................16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Riensche v. Cingular Wireless, LLC*,
   2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ............................................... 15

*Schatz v. Cellco P'ship*,
   842 F. Supp. 2d 594 (S.D.N.Y. 2012) ............................................................. 18

*Segal v. Amazon.com, Inc.*,
   763 F. Supp. 2d 1367 (S.D. Fla. 2011) ........................................................... 15

*Signavong v. Volt Mgmt. Corp.*,
   2007 WL 1813845 (W.D. Wash. June 21, 2007) ............................................. 19

*Simonoff v. Expedia, Inc.*,
   643 F.3d 1202 (9th Cir. 2011) ......................................................................... 15

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ........................................................................... 16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (2010) .................................................................................... 13

*Tuminello* v. *Richards*,
   2012 WL 750305 (W.D. Wash. Mar. 8, 2012) ................................................ 17

*U.S. v. Drew*,
   259 F.R.D. 449 (C.D. Cal. 2009) ..................................................................... 15

*Whisler v. H.J. Meyers & Co., Inc.*,
   948 F. Supp. 798 (N.D. Ill. 1996) .................................................................... 16

**WASHINGTON STATE CASES**

*Gandee v. LDL Freedom Enter., Inc.*,
   176 Wn.2d 598 (2013) ..................................................................................... 20

*M.A. Mortenson Co. v. Timberline Software Corp.*,
   140 Wn.2d 568 (2000) ..................................................................................... 15

*Satomi Owners Ass'n v. Satomi, LLC*,
   167 Wn.2d 781 (2009) ................................................................................ 18, 20

*Schnall v. AT & T Wireless Servs., Inc.*
   171 Wn.2d 260 (2011) ..................................................................................... 14

*Scott v. Cingular Wireless*,
   160 Wn.2d 843, 161 P.3d 1000 (2007) ........................................................... 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Tjart v. Smith*,
107 Wn. App. 885 (2001) ................................................................................... 19

*Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima*,
122 Wn.2d 371 (1993) ....................................................................................... 19

*Zuver v. Airtouch Commc'ns*,
153 Wn.2d 293, 103 P.3d 753 (2004) ............................................................... 19

**FEDERAL STATUTES**

9 U.S.C. § 2 ............................................................................................... 12, 13, 18

9 U.S.C. § 3 ................................................................................................. 1, 20, 21

**WASHINGTON STATE STATUTES**

Washington Consumer Protection Act, RCW Chapter 19.86 ................................. 12

Washington Uniform Money Services Act, RCW 19.230.330 ......................... 11, 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I.   INTRODUCTION

Amazon Services LLC ("Amazon") provides a platform for third parties to sell products through the Amazon.com website.  Plaintiffs Jo Ellen Peters and Ken Lane are former sellers on Amazon.com.  Both agreed to the terms and conditions of selling on Amazon.com, embodied in Amazon's Business Solutions Agreement ("BSA").  Amazon revoked each of their selling privileges for violating those terms—Peters for selling counterfeit products, and Lane for encouraging other sellers to participate in price-fixing and engaging in inappropriate and abusive communications.  Amazon withheld payments to each Plaintiff to cover potential chargebacks, refunds or returns to dissatisfied consumers.  Amazon's actions were entirely consistent with the agreements both Plaintiffs accepted and consistent with Amazon's overarching commitment to customer satisfaction (such as Amazon's A-to-z Guarantee) reflected in those agreements.  But Plaintiffs sued nonetheless.

The BSA bars this action.  Under that agreement, both Plaintiffs agreed to arbitrate any disputes relating to Amazon's services on an individual basis and not in a class proceeding.  Plaintiffs' agreements to arbitrate claims with Amazon on an individual basis are valid and enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), as well as binding precedent from the United States Supreme Court and the Ninth Circuit.  Because a valid and enforceable arbitration agreement covers the disputes between Plaintiffs and Amazon, the Court must compel arbitration of Plaintiffs' claims and stay all proceedings in this action.  9 U.S.C. § 3.

## II.   FACTUAL BACKGROUND

### A.   Sellers on Amazon.com.

Amazon.com takes seriously its commitment to be Earth's most customer-centric company.  Amazon makes this commitment not only to consumers who buy goods and services through Amazon.com, but also to the individuals and businesses who sell through Amazon.com.  All sellers on Amazon.com are subject to agreements setting forth their

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

undertakings and requirements in using Amazon.com as a sales platform.  These agreements, including specifically the BSA that each Plaintiff accepted, require sellers to comply with Amazon's policies for selling on Amazon.com.  *See* Declaration of Hallie Magrini, Ex. A (BSA), Introduction; *see also* First Amended Complaint ("FAC") (Dkt. 16), Ex. A, Introduction & ¶ 22.

A key policy that benefits both consumers and sellers is Amazon's A-to-z Guarantee.  Under the A-to-z Guarantee, if customers are dissatisfied (*e.g.*, because of the description or condition of an item or that it was not timely delivered), Amazon itself may provide a refund to a seller's dissatisfied customer, then look to the seller for reimbursement.  *See* "About A-to-z Guarantee," at http://www.amazon.com/gp/help/customer/display.html/ref=hp_537868_abazguar?nodeId= 200783670.  Amazon reserves the right to deduct such refunds from seller payments, as expressly provided in the seller agreements.  BSA ¶ S-3.2; FAC, Ex. A ¶¶ 5.a & 5.b.  The A-to-z Guarantee helps all third-party sellers on Amazon.com by assuring customers that they can buy with confidence and giving sellers clear expectations about their listings and expectations for customer fulfillment.[1]

In order to ensure the integrity of its marketplace, Amazon also reserves the right to investigate sellers' activities, and if necessary, suspend or terminate their selling privileges.  *See* BSA ¶ 2; FAC, Ex. A ¶ 13.b.  Amazon has the contractual right to withhold payments to sellers for 90 days after a suspension or termination or until it completes an investigation or to withhold payments altogether if Amazon determines that a seller account was used for fraud or illegal activity.  BSA ¶ 2; FAC, Ex. A ¶¶ 5.h & 5.m; *see* "When will I be paid?", at http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_sib?ie=UTF8&nodeId =201069630.  The purpose for this delay of at least three months is to allow time for setoffs

---

[1] Indeed, customers may submit A-to-z claims to Amazon only after they first give the seller an opportunity to resolve the claim.  *See* "A-to-z Guarantee:  Frequently Asked Questions," at http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_cn?ie=UTF8&nodeId=13832201.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 2

for "chargebacks, refunds, [or] adjustments" to customers, as the agreement also expressly provides.  BSA ¶ 2; *see also* FAC, Ex. A ¶¶ 5.h & 5.m.

**B.**    **Plaintiffs' Amazon Seller Accounts and Termination of Their Accounts.**

Both Plaintiffs were sellers on Amazon.com.  FAC ¶ 9.  Each accepted and agreed to the applicable terms and conditions of using Amazon's websites, which they admit govern their use of Amazon's services.  *Id.* ¶ 15.  Both also admit that (1) Amazon suspended their accounts and notified them of the suspensions; (2) they appealed the suspension decisions; and (3) they received written notice that Amazon decided to terminate their accounts based on violations of Amazon's terms and policies.  *Id.* ¶¶ 22–25.

**1.**    **Ms. Peters' Seller Account.**

Plaintiff Jo Ellen Peters signed up to become an Amazon seller in October 2012.  *Id.* ¶ 22.  She used her account to market what she alleges were "hard to find DVDs."  *Id.*

Within a few weeks after Ms. Peters began selling goods, Amazon received reports that she had sold what appeared to be a counterfeit DVD.  Declaration of Kelly Johnston ¶¶ 3–4.  In response to this complaint, Amazon instituted an investigation of her account to "ensure … compliance with our selling policies" and a positive "customer experience."  *Id.* ¶ 4 & Ex. A.  Based on this investigation, Amazon determined that she likely was selling counterfeit goods.  *Id.* ¶ 4.  On November 8, 2012, Amazon informed Ms. Peters that it would terminate her selling privileges.  *Id.* Ex. B.[2]  Amazon also informed her that it had placed a "hold on any funds in [her] seller account," the hold would be removed "[a]fter 90 days," and she would receive any funds remaining after chargebacks and refunds thereafter "per your settlement schedule."  *Id.*

Ms. Peters appealed the termination.  *Id.* ¶ 4.  On November 9, 2012, Amazon notified her that it had reviewed her appeal and "decided not to reinstate [her] selling

---

[2] Although Peters alleges Amazon suspended her account on November 7, 2012, FAC ¶ 23, Amazon actually notified her it was "reviewing" her account on that date, and then suspended the account on November 8, 2012.  *See id.* Exs. A & B.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

privileges." *Id.* ¶ 4 & Ex. C.  Ms. Peters again contacted Amazon, and on November 10, 2012, Amazon specifically advised her:  "Your account will be evaluated 90 days after the initial date of block or closure request, which was 11/08/2012.  Your funds will be disbursed to the bank account on file ***after your 90 day review***, minus any outstanding charge-backs or A-to-z Guarantee claims."  *Id.* Ex. D (emphasis added).  Ms. Peters admits Amazon initiated payment to her on February 11, 2013 (95 days after terminating her account), and she received the funds in two days.  *Id.* ¶ 4; *see* FAC ¶ 23 & n.7.

### 2.    Mr. Lane's Seller Account.

Plaintiff Ken Lane first signed up as an Amazon seller in January 2010.  FAC ¶ 24. He alleges he "marketed, sold, and shipped" aviation-related materials using Amazon's website for two years.  FAC ¶ 24.  During his tenure as an Amazon seller, however, Lane committed numerous policy violations and ultimately was terminated for attempted price-fixing and inappropriate communications to others through the Amazon.com website. Johnston Decl. ¶¶ 5–6.

For example, in April 2012, when Amazon notified Lane of an incorrect publication date on one of his aviation book listings, he responded:

> YOU PEOPLE ARE F***ING IDIOTS.  DO YOU GET THAT?  F***ING IDIOTS!!!!
>
> GET OFF YOUR F***ING A** AND CONTACT THE PUBLISHER OR CONTACT INDEPENDENT PUBLISHER'S GROUP IN CHICAGO THROUGH WHOM YOU BUY THESE BOOKS.
>
> WHAT A BUNCH OF F***ING MORONS!!!!!

*Id.* ¶ 6 & Ex. E.[3]  A few days later, Lane again wrote Amazon, stating:

> You people are STUPID.
>
> Get off your f***ing a** and contact the publisher.
>
> [same phrase repeated 16 more times]

---

[3] Mr. Lane's communications are edited here to eliminate expletives.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

> Do I get my point across???  Probably not because you're too stupid and too f***ing lazy to do your f***ing job!!!

*Id.* Ex. F.

On April 10, 2012, Amazon notified Mr. Lane it had "received a complaint about an inappropriate email contact from [him] to another member of the Amazon.com community."  *Id.* ¶ 6 & Ex. G.  It advised him that "contact between parties must be courteous and limited to transaction details.  Facilitating inappropriate or unsolicited contact is a violation of our policies," and warned him that "[t]o avoid the blocking of your account, please abide by our professional standards when contacting members of the Amazon community."  *Id.*

Based on this and similar complaints, Amazon reviewed Mr. Lane's account.  *Id.* ¶ 6.  The investigation revealed that, in addition to harassing conduct, Mr. Lane had engaged in apparent efforts at price fixing.  *Id.*  For example, another seller of aviation products notified Amazon that Mr. Lane "is determined to artificially increase the prices in collusion with other companies" and had repeatedly contacted that seller about changing its prices on Amazon.  *Id.*  Mr. Lane also frequently emailed other Amazon sellers of aviation products, stating things like:

- "I'd suggest raising your price on this one.  By my spreadsheet, the $249 is just about break even.  I notified the other guy as well."

- "I'd like to talk to you about raising the price with me so we can both do better.  I just raised my price a bit.  I'd like to move it up to a more reasonable 54.95.  I hope we can both do this."

- "Why do you sell a book for so cheap only to make $2.35?  … Is your owner that stupid or just the employees and the owner has no clue how incompetent they are?  Ken Lane."

*Id.* Ex. H.

On May 29, 2012, based on its investigation and review, Amazon notified Mr. Lane that it had terminated his seller account:

> [W]e have removed your selling privileges, canceled your listings, and placed a temporary hold on any funds in your Marketplace Payments account.  Any new selling accounts you open will be closed.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 5

> We took this action because we recently discovered that you have been conspiring with other sellers to raise prices on certain items.  We have taken this unusual step because this conduct violates your agreement with Amazon.com, which requires compliance with all laws and prohibits fraudulent conduct.
>
> We do not make the decision to block accounts lightly, but it is Amazon.com's goal to provide our customers with an exceptional customer experience whether they buy directly from Amazon.com or one of our thousands of trusted sellers.

*Id.* ¶ 6 & Ex. I.  When Mr. Lane appealed, Amazon responded that its decision to close his account for policy violations was final:  "The closure of a selling account is a permanent action.  Any subsequent accounts that are opened will be closed as well."  *Id.* Ex. J.[4]

Despite this caution, Mr. Lane proceeded to open four other related seller accounts with Amazon.  *Id.* ¶¶ 7-9.  He did so beginning on June 3, 2012—five days after Amazon closed his original account.  *Id.* ¶ 7.  Amazon closed that account as soon as it was discovered.  *Id.*  Undeterred, Mr. Lane opened three other seller accounts over a seven-month period thereafter.  *Id.* ¶¶ 8–9.  Each time, Amazon was able to identify that the new accounts were related to Mr. Lane's prior blocked seller account, and Amazon terminated each one.  *Id.*  However, each time Mr. Lane also accepted and agreed to BSA and the applicable terms and conditions (discussed below).

### C.    Plaintiffs' Applicable Agreements.

Plaintiffs admit they entered into contractual agreements to sell products on Amazon's website.  FAC ¶ 9.  Although Plaintiffs allege they "acquiesce[d]" to Amazon's Participation Agreement, *id.*,[5] they do not claim that anyone forced them to sell through

---

[4] Mr. Lane admittedly was not happy with the closure of his account.  In another email, he wrote:

> But, all this bull**** is a moot issue because one of my competitors lied their a** off and got me banned from selling.  As usual, you sided with them and f***ed me.  You don't provide any proof of the claim.  You just follow their word and f*** me over.
>
> Well, f*** you and the horse you rode in on you f***ing dumb sh**!
>
> Damn, you people are so f***ing stupid!

*Id.* Ex. K.

[5] As discussed below, both Plaintiffs entered into and accepted the Amazon BSA, and so their references to the Participation Agreement are misleading.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Amazon.com.  Plaintiffs obviously *chose* Amazon, among other options, as the platform for selling their products.  They also chose, as a condition of using Amazon's services, to accept the governing terms and conditions.  Plaintiffs also attempt to overlook the agreements they actually accepted, particularly that their agreements contain provisions requiring individual arbitration and barring class claims.

### 1.     Ms. Peters Accepted Amazon's Arbitration Agreement.

When Ms. Peters signed up as an Amazon seller on October 15, 2012, she subscribed to Amazon's Business Solutions Agreement ("BSA").  Magrini Decl. ¶¶ 2–3 & Ex. A (BSA).  Like all other sellers, she had an opportunity to review the BSA before deciding to accept it.  *Id.* ¶ 2.  Indeed, she could not begin selling on Amazon unless she agreed to the BSA by checking a box:

> **Amazon Services Business Solutions Agreement:** ☐  I have read and accepted the terms and conditions of the <u>Agreement</u>

*Id.* ¶ 2 & Ex. B (emphasis in original and underscored term is a hyperlink to the BSA).  Had Ms. Peters failed to accept the BSA and its terms, she could not have opened her seller account or use Amazon's seller services.  *Id.*

Through the BSA, Peters and Amazon both agreed to resolve "any dispute" through arbitration or small claims court:

> Any dispute with Amazon or its affiliates or claim relating in any way to this Agreement or your use of the Services shall be adjudicated in the Governing Courts, and you consent to exclusive jurisdiction and venue in the Governing Courts, **or, if Your Elected Country is the United States, we both consent that any such dispute or claim will be resolved by binding arbitration as described in this paragraph, rather than in court,** except that you may assert claims in a small claims court that is a Governing Court …

BSA ¶ 18 (emphasis in original).  Under this clause, Ms. Peters (like other Amazon sellers) retains the same substantive rights and can obtain the same relief in arbitration as she could in court:

> **There is no judge or jury in arbitration, and court review of an arbitration award is limited.  However, an arbitrator can award on an**

**individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages)** …

*Id.* (emphasis in original).

The agreement provides an inexpensive, efficient and fair mechanism for sellers to resolve any disputes with Amazon.  Amazon agrees to pay all arbitrator fees and costs for claims under $10,000 and agrees unilaterally to waive its claims for attorneys' fees (unless claims are determined to be frivolous).  *Id.*  Arbitrations are conducted by the American Arbitration Association pursuant to its rules, including rules specifically concerning consumer-related disputes.  *Id.*  Thus, Ms. Peters can choose that arbitration be conducted in person (in Fayette County, Kentucky, where she lives, *see* FAC ¶ 1, or another convenient location), by telephone, or based on written submissions.  BSA ¶ 18.  Whatever the means of arbitration she chooses, arbitration for her would be cost free for the claims she has asserted.

Consistent with the aim of providing an efficient and economical dispute resolution process, Ms. Peters also agreed not to pursue class claims:

**We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**

*Id.* (emphasis in original).[6]  The BSA also provides that any disputes will be governed by the FAA and associated federal law, as well as the laws of the State of Washington (where Amazon's principal place of business is located).  *Id.*[7]

> ### 2. Mr. Lane Repeatedly Accepted Amazon's Arbitration Agreement.

Mr. Lane first signed up as an Amazon seller on January 15, 2010, under the Participation Agreement.  Magrini Decl. ¶¶ 10–11 & Ex. C.  That agreement incorporated an arbitration provision *(*see below), but, more simply, Mr. Lane expressly accepted the

---

[6] The BSA has been revised since Peters accepted it, although no changes were made to the arbitration agreement.  *See* Margrini Decl. ¶ 9.

[7] For U.S. sellers "Governing Laws" means "the laws of the State of Washington, United States together with the Federal Arbitration Act and other applicable federal law."  *Id.* at p. 5 (definitions).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

BSA and its arbitration agreement *four times* by opening four separate seller accounts both before and after his dispute with Amazon arose.

On June 3, 2012 (five days after Amazon terminated his first seller account), Mr. Lane opened a second Amazon seller account and accepted the BSA. *Id.* ¶ 4 & Ex. A (BSA). Like Ms. Peters, Lane agreed to resolve through individual arbitration (or small claims court) "any dispute" concerning his use of Amazon seller services.

> Any dispute with Amazon or its affiliates or claim relating in any way to this Agreement or your use of the Services shall be adjudicated in the Governing Courts, … **or, if Your Elected Country is the United States, we both consent that any such dispute or claim will be resolved by binding arbitration as described in this paragraph, rather than in court,** except that you may assert claims in a small claims court that is a Governing Court …

BSA ¶ 18 (emphasis in original). Mr. Lane also agreed not to pursue class claims. *See id.*

Amazon recognized that Mr. Lane improperly opened this second account despite the prior termination. Johnston Decl. ¶ 7. Amazon quickly blocked the account on June 4, 2012, *id.*, but not until after Mr. Lane signed up and accepted the BSA. Magrini Decl. ¶ 4.

A little more than a month after Amazon terminated him for a second time, Mr. Lane opened another Amazon seller account on July 8, 2012. Johnston Decl. ¶ 8. Although he used a different name this time, Amazon was able to determine the account belonged to Mr. Lane by examining and comparing account information. *Id.* In particular, Mr. Lane used this account to engage in the same inappropriate behavior (attempted price-fixing ) and abusive communications that resulted in the closure of his first account. *Id.* He continued to email other Amazon sellers about raising their prices on aviation products, saying things like: "I'm interested in also listing your book but could not compete with a price that is so low below a normal retail price. Would you consider raising your price to suggested retail so you're not competing with resellers?" *Id.* ¶ 8 & Ex. L. He also continued his pattern of profane and harassing communications. For example, when Amazon notified him of an incorrect listing, Mr. Lane responded:

> I DID NOT MAKE IT DIFFERENT.  THE PUBLISHER DID.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

GIVE BACK MY MONEY YOU F***ING RIP OFF A**HOLES!!!!!!

Best,

Ken

*Id.* Ex. M.  When Amazon explained why it had reimbursed the customer who purchased the incorrectly listed item pursuant to the A-to-z Guarantee, Mr. Lane responded:

Hey sh** for brains??? …

YOU OBVIOUSLY DON'T GIVE A FLYING F*** ABOUT BUYERS. THAT'S MORE THAN EVIDENT.  IT'S NOT YOUR MONEY.  YOU HAVE TO F***ING INCENTIVE TO MAINTAIN A MORAL CODE.

SO, MAKE ALL THE EXCUSES YOU WANT ABOUT THE WRONG ITEM.  YOU'RE NOT IN THE BUSINESS SO YOU HAVE YOUR HEAD UP YOU'RE A**HOLE.

YOU GAVE AWAY MY MONEY AND MY PRODUCT.  YOU FACILITATED A CRIME.  YOU'RE A F***ING ACCESSORY TO THEFT.  YOU ARE A CROOK!

Put that in your pipe and smoke it you f***ing, piece of sh**, Obama voter!

*Id.* Ex. N.  Amazon also blocked this account, *id.* ¶ 8, but not until after Mr. Lane had again accepted the terms of the BSA.  Magrini Decl. ¶ 4.

Despite having had three seller accounts blocked by Amazon, Mr. Lane opened two more accounts through January 2013 (albeit using different contact information).  Johnston Decl. ¶ 9.  But Amazon flagged and terminated these improper accounts too, because Mr. Lane listed the same products as before and again engaged in similar inappropriate conduct. *Id.*  Thus, in all, Mr. Lane agreed to and accepted the Amazon BSA and its arbitration agreement *four times* from June 3, 2012 through January 27, 2013, before he asserted his claims in this action.  *Id.* ¶¶ 7–9; Magrini Decl. ¶ 4.  According to the FAC, Mr. Lane's claims are based on his allegations that Amazon failed to remit payments to him by September 1, 2012 (notwithstanding his termination for illegal and improper conduct).  *See* FAC ¶ 25.  Thus, Mr. Lane accepted the BSA and the arbitration agreement *two times* before his dispute with Amazon arose and another *two times* after that.  Magrini Decl. ¶ 4; Johnston Decl. ¶¶ 7–9.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 10

Like Ms. Peters, he also is bound to the terms of the BSA and entitled to the benefits of the arbitration provision, including that he may obtain full relief on individual claims up to $10,000 without paying arbitration costs or fees. *See supra* Section II.C.1 (Ms. Peters and Mr. Lane accepted the same arbitration agreement).

Mr. Lane also separately accepted the Amazon arbitration agreement. When he first signed up for a seller account in 2010 under the Amazon Participation Agreement, he accepted that it incorporated Amazon's Conditions of Use ("COUs"), including any subsequent modifications. FAC, Ex. A, Introduction & ¶ 22.a; Magrini Decl. ¶¶ 10–12 & Ex. C. The COUs contained an arbitration provision (identical in all material respects to the provision Mr. Lane accepted in the BSA) from August 2011 onward. Magrini Decl. ¶ 12 & Ex. D. Mr. Lane could have cancelled his seller account if he did not wish to accept arbitration, but he did not do so. *Id.* ¶ 12. Instead, he accepted the COUs (and the arbitration agreement) each time he sold products from his seller account or used the website himself after August 2011. The arbitration agreement in the COUs states:

> **Any dispute or claim relating in any way to your visit to Amazon.com or to products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court …

*Id.* Ex. D (emphasis in original). Here again, as before, Lane agreed not to pursue any claims by way of a class action but only in individual arbitration. *See id.*

### D.    Plaintiffs' Claims.

Plaintiffs allege Amazon holds payments it collects longer than permitted by contract and Washington law before remitting the portion of the funds due to sellers. FAC ¶ 9. Plaintiffs contend that Amazon must remit funds to sellers within 14 days under the Participation Agreement, or within 10 business days, based on their allegation that the Washington Uniform Money Services Act, RCW 19.230.330 ("UMSA"), should apply. FAC ¶¶ 18–20, 22, 24. They further allege that Amazon often "suspends or cancels accounts, and places holds on sellers' funds" for over 90 days, which they claim is the

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

"contractual period" allowed by the Participation Agreement.  *Id.* ¶ 10; *see also id.* ¶ 26 (defining subclass as sellers whose accounts were suspended).

Plaintiffs assert claims for breach of contract, breach of fiduciary duty, violation of the Washington Consumer Protection Act, RCW ch. 19.86, declaratory relief, and unjust enrichment.  FAC ¶¶ 41–105.  They seek to represent a putative class consisting of:

> All persons or entities in the U.S., who opened a seller account with Amazon … and who have shipped at least one item to at least one buyer on the Amazon.com website since March 15, 2009,

and a putative subclass of:

> [A]ll persons or entities in the U.S. (1) who were provided written notice from Amazon that the account had been suspended; (2) who, at the time of such notice, had funds on account with Amazon; and (3) Amazon did not transmit such funds to the seller by the shorter of (a) 90 days following the initial date the account was suspended by Amazon, or (b) the date on which the seller was provided written notification that Amazon's review was complete and the decision to close the account was final.

*Id.* ¶ 26.

Plaintiffs filed their First Amended Complaint on April 23, 2013.  *See* Dkt. 16. Amazon has not answered but instead now timely moves to compel arbitration.

## III.   ARGUMENT

The FAA makes an agreement to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  "The 'principal purpose' of the FAA is to ensure that private arbitration agreements are enforced according to their terms.'"  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting *Volt Info. Servs., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 631, (1985)); *see*

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements …."). The Supreme Court has repeatedly emphasized that this "national policy favoring arbitration" supersedes "state [law] attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 16 (1984)). "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S. Ct. at 1745.

As the Ninth Circuit has said, "recent opinions of the Supreme Court have given broad effect to arbitration agreements." *Kilgore v. Keybank, Nat'l Ass'n*, 2013 WL 1458876, at *2 (9th Cir. Apr. 11, 2013) (en banc); *see also Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012) ("*Concepcion* is broadly written."). Thus, in *Concepcion*, the Court held that the FAA preempted a California rule refusing to enforce arbitration agreements containing class action waivers on grounds of unconscionability. 131 S. Ct. at 1753. In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), the Court held the contractual nature of arbitration meant that a party could not be compelled to participate in class arbitration unless it had specifically agreed to such procedures. *Id.* at 1776. In *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012) (per curiam), the Court reaffirmed the principle that state law may not prohibit arbitration of a particular type of claim, invalidating a West Virginia rule refusing to enforce arbitration agreements for claims of personal injury or wrongful death against nursing homes. *Id.* at 1203-04 ("The statute's text includes no exception for personal-injury or wrongful-death claims. It requires courts to enforce the bargain of the parties to arbitrate."). And in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012), the Court confirmed the FAA requires arbitration of even federal statutory claims, absent a clear congressional command to the contrary. *Id.* at 669. "[The FAA] requires courts to enforce agreements to arbitrate according to their terms." *Id.*

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When both elements are met, as here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration." *Dean Witter*, 470 U.S. at 218 (emphasis in original); *Kilgore*, 2013 WL 1458876, at *2.

### A.   Plaintiffs Agreed to Arbitrate Their Claims.

The FAA requires the enforcement of arbitration agreements according to their terms, although it also allows that, in determining whether parties agreed to arbitrate, "courts … apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The agreements Plaintiffs accepted all contain a Washington choice-of-law provision, *see* Magrini Decl. Ex. A (BSA) ¶ 18, Ex. C (Participation Agreement) ¶ 18, Ex. D (COUs) "Applicable Law" ¶, and this governing law provision is fully enforceable.[8]

This Court has recognized—as have courts across the country—that contracts formed in Internet transactions are enforceable as much as any other contract. In *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *3 (W.D. Wash. Aug. 17, 2007) (Pechman, J.), the Court held that plaintiff accepted Softwrap's terms when he registered on its website. "Plaintiff does not dispute that he registered with Softwrap on three separate occasions, and that on each of those occasions, he manifested his assent to the License Agreement by 'clicking' the appropriate box." *Id.* at *2. Because "Plaintiff had to register, and agree to the terms of the contract before he could ever use Softwrap's products," he had manifested his assent to the arbitration agreement. *Id.* at *3. The Court therefore

---

[8] Under Washington law, the parties' choice of law must be honored if the chosen state's law bears a "substantial relationship to the parties or the transaction" and does not violate "a fundamental policy of a state which has a materially greater interest than the chosen state." *Amazon.com, Inc. v. Powers*, 2012 2012 WL 6726538, at *11 (W.D. Wash. Dec. 27, 2012). Amazon has a "substantial relationship" to Washington (it is headquartered here), and so the parties' choice of Washington law is enforceable. *See id.* (enforcing Washington choice-of-law in Amazon agreement); *Schnall v. AT & T Wireless Servs., Inc.* 171 Wn.2d 260, 266 (2011) (Washington courts "generally enforce contract choice of law provisions").

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

compelled arbitration.  *Id.*at *6; *see also Riensche v. Cingular Wireless, LLC*, 2006 WL

3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was

required to agree to the Terms online" before using defendant's services); *M.A. Mortenson

Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 584 (2000) (holding consumer accepted

license by using software after receiving notice of its terms and conditions).  Many other

cases are to the same effect.[9]

In *Segal v. Amazon.com*, the court found that Amazon's process for third parties to

sign up and sell goods on the Amazon.com website creates a valid and enforceable contract.

763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011), *aff'd*, 2011 WL 1582517 (11th Cir. April 21,

2011).  In that case, the district court ruled that plaintiffs "agreed to the terms of the

Participation Agreement" by accepting them online and they therefore were bound by the

agreement.  763 F. Supp. 2d at 1369 (citation omitted).  In going through the same

subscription process, Plaintiffs are likewise bound.

In subscribing to become Amazon sellers, Plaintiffs each agreed to the Amazon

agreement (the BSA) and accepted its terms.  Each had to check a box stating "I have read

and accepted the terms and conditions of [the BSA]," or they could not sign up.  Magrini

Decl. ¶¶ 2–4 & B.  In doing so, Plaintiffs agreed to the governing terms and conditions,

including the arbitration agreement.  Ms. Peters accepted the BSA and its arbitration

agreement from the outset.  *Id.* ¶ 3.  Mr. Lane initially signed up under an earlier version of

the Participation Agreement (which also included arbitration, *see supra* Section II.C.2), but,

even more directly, he accepted the BSA and the arbitration four times, both before and

---

[9] *See, e.g.*, *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) (enforcing online user agreement); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing Amazon's terms because "clickwrap agreements are valid and enforceable contracts" (citation omitted)); *Huff v. Liberty League Int'l, LLC*, 2009 WL 1033788, at *8 (C.D. Cal. Apr., 4, 2009) ("courts across the country have enforced so-called 'clicking agreements' that contain arbitration clauses"); *U.S. v. Drew*, 259 F.R.D. 449, 462 n. 22 (C.D. Cal. 2009) ("Clickwrap agreements have been routinely upheld by circuit and district courts.") (citation omitted); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 238 (E.D. Pa. 2007) ("By clicking on 'Yes, I agree to the above terms and conditions' button, Plaintiff indicated assent to the terms," including the arbitration agreement); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1011 (D.C. 2002) ("A contract is no less a contract simply because it is entered into via a computer.").

---

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 15

after his dispute with Amazon arose.  *Id.* ¶ 4; Johnston Decl. ¶¶ 7–9.  Each time Mr. Lane accepted the BSA, he not only agreed to arbitrate claims arising under the Agreement, but also "[a]ny dispute … or claim relating in any way to [his] use of the Services."  BSA ¶ 18.  Thus, he is bound because the arbitration agreement covers both future disputes and past disputes.  *See Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103–06 (C.D. Cal. 2002) (agreement to arbitrate "any legal claim relating to this Agreement ... or your Service" required plaintiffs to arbitrate prior claims relating to their service); *see also R Vallejo v. Garda CL Sw., Inc.*, 2013 WL 391163, at *9 (S.D. Tex. Jan. 30, 2013); *Green v. W.R.M. & Assoc., Ltd.*, 174 F. Supp. 2d 459, 463 (N.D. Miss. 2001).[10]  Both Plaintiffs are bound to the contract terms they accepted (and, in Mr. Lane's case, the terms he accepted repeatedly).

**B.    Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement.**

Plaintiffs' claims squarely fall within the arbitration agreement they accepted.  That agreement encompasses "[a]ny dispute with Amazon or its affiliates or claims relating in any way to this Agreement or your use of [Amazon's] Services."  BSA ¶ 18.  As the Ninth Circuit recognizes, "all disputes" clauses of this sort are "broad and far reaching" in scope, *Chiron Corp.*, 207 F.3d at 1131, and are "routinely used … to secure the broadest possible arbitration coverage," *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993).  Such clauses require arbitration of all disputes that "touch matters" covered by the parties' contract.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Plaintiffs challenge Amazon's right to withhold seller remittances under agreements governing the seller relationship with Amazon.  *See* FAC ¶¶ 8–13.  Their claims thus fall

---

[10] Courts considering similar arbitration provisions have found that they cover claims arising before or after execution of the arbitration agreement.  *See, e.g.*, *Green v. W.R.M. & Assocs., Ltd.*, 174 F. Supp. 2d 459, 463 (N.D. Miss. 2001) (where plaintiff was "clearly aware of [the defendant's] past wrongdoing … at the time of signing the Arbitration Agreement" concerning "[a]ny dispute," "[t]his is consistent with the parties' intentions to give up their rights to sue in court for all of their potential claims, whether they occurred before or after signing of the agreement"); *Whisler v. H.J. Meyers & Co., Inc.*, 948 F. Supp. 798, 801-02 (N.D. Ill. 1996) (rejecting plaintiffs' argument that arbitration agreement could not be applied to transactions that occurred prior to their signing of the account agreement, where agreement related to "any controversy arising out of or relating to any of my accounts," a statement that "speaks in terms of relationships and not timing") (internal quotation omitted).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

squarely within the scope of the arbitration agreement and must be arbitrated, particularly

in light of the FAA's strong presumption in favor of arbitrability.  *See AT&T Techs., Inc. v.*

*Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (courts must presume disputes are

arbitrable "unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute"); *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration"); *Prima Paint Corp. v.*

*Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967); *Tuminello* v. *Richards*, 2012 WL

750305, at *2 (W.D. Wash. Mar. 8, 2012) ("the FAA divests courts of their discretion and

requires courts to resolve any doubts in favor of compelling arbitration").

### C.      The Arbitration Agreement and Class Action Waiver Are Enforceable Under the FAA and State Law.

Plaintiffs agreed to individually arbitrate any dispute relating to their use of

Amazon's services.  They have no basis to maintain a class action in court.

Under *Concepcion*, the class action waiver in Amazon's arbitration provision is

fully enforceable.  The Supreme Court held in *Concepcion* that the FAA preempts state

laws invalidating class action waivers in arbitration agreements because such laws

contravene the FAA's goals and the "fundamental attributes of arbitration."  131 S. Ct. at

1748.  *Concepcion* makes clear that states cannot refuse to enforce arbitration agreements

with class waivers on policy grounds such as that "small-dollar claims … might otherwise

slip through the legal system."  *Id.* at 1753.  The Supreme Court has since reaffirmed and

emphasized the holding in *Concepcion* that state laws may not "prohibit[] outright the

arbitration of a particular type of claim," *Marmet Health Care*, 132 S. Ct. at 1203-04, and

that courts must enforce arbitration agreements as written, *CompuCredit*, 132 S. Ct. at

673.[11]  The Supreme Court has foreclosed Plaintiffs' attempts to circumvent their

---

[11] Following *Concepcion*, federal courts have uniformly rejected state-law challenges to arbitration clauses containing class action waivers.  *See, e.g., Gray v. Suttell & Assocs.*, 2012 WL 1951657, at *2 (E.D. Wash. Mar. 19, 2012) (after *Concepcion*, "an arbitration agreement with a class-action waiver is enforceable and not unconscionable"); *Emilio v. Sprint Spectrum L.P.*, 2012 WL 917535, at *4 (S.D.N.Y.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

agreements to arbitrate individually.  *See Adams v. AT&T Mobility, LLC*, 816 F. Supp. 2d 1077, 1087 (W.D. Wash. 2011) ("*Concepcion* is, at a minimum, the death knell for any application of state law that declares arbitration agreements unenforceable because they bar class actions and class arbitrations.").[12]

Plaintiffs have no other basis to avoid their agreement to arbitrate.  While Section 2 of the FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, Plaintiffs cannot show any such grounds here.  If Plaintiffs contend the arbitration agreement is unenforceable, they bear the burden of proving that.  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000); *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 797 (2009).

In their complaint, Plaintiffs' only apparent challenge is that they contend they accepted Amazon's terms on a "take it or leave it" basis.  *See* FAC ¶ 11.  If Plaintiffs mean to argue that the arbitration agreement in the BSA somehow is procedurally unconscionable because it is a form agreement, they are simply wrong.  The Supreme Court has made clear that arbitration agreements in form contracts, like other contracts, are fully enforceable. *See Concepcion*, 131 S. Ct. at 1750 (enforcing form contract; "the times in which consumer contracts were anything other than adhesive are long past"); *Carnival Cruise Lines, Inc. v.*

---

Mar. 16, 2012) (under *Concepcion*, the FAA preempts Kansas law requiring class proceedings); *Crewe v. Rich Dad Educ., LLC*, 2012 WL 3240185, at *17 (S.D.N.Y. Aug. 3, 2012) (*Concepcion* "approved such [class] waivers as advancing legitimate goals, including facilitating lower costs, faster resolution, and eliminating procedural complexity"); *see also Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 597-98 (S.D.N.Y. 2012); *LaVoice v. UBS Fin. Servs.*, 2012 WL 124590, at *6 (S.D.N.Y. Jan. 13, 2012).

[12] Before *Concepcion*, Washington courts had invalidated arbitration agreements containing class waivers, viewing such agreements as substantively unconscionable.  *See Scott v. Cingular Wireless*, 160 Wn.2d 843, 857, 161 P.3d 1000 (2007).  After *Concepcion*, however, the Ninth Circuit has held that Washington's prior rule is now preempted by the FAA.  *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1159-60 (9th Cir. 2012) (*Concepcion* "forecloses" the argument that class action waivers are unconscionable under Washington law).  As this Court has explained: "Under *Concepcion*, the Court cannot consider Washington's policy on unconscionability of class-action waivers—'fundamental' or not, … since the FAA preempts that policy and precludes a court from taking it into account in conducting the unconscionability analysis."  *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *8 n.2 (W.D. Wash. March 22, 2013).  In short, under *Concepcion*, the FAA requires the Court to enforce Plaintiff's arbitration agreement, even though the agreement makes class-wide procedures unavailable.

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Shute*, 499 U.S. 585, 595 (1991) (enforcing form contract, noting plaintiff "retained the option of rejecting the contract with impunity").

Moreover, courts applying Washington law have long held (even before *Concepcion*), that the mere fact that an arbitration agreement is contained in a form contract or offered on a "take it or leave it" basis does not make it procedurally unconscionable.  *See Hauenstein*, 2007 WL 2404624, at *4; *Zuver v. Airtouch Commc'ns*, 153 Wn.2d 293, 304, 103 P.3d 753 (2004).  "[T]he fact that unequal bargaining power exists will not, standing alone, justify a finding of procedural unconscionablity." *Id.*, (*quoted in Hauenstein*, 2007 WL 2404624, at *4).  In signing up to be sellers on Amazon, Plaintiffs entered into a business relationship; they had a meaningful choice to decide whether or not they wanted to sell on Amazon.com (or some other Internet platform) by accepting the BSA and the arbitration agreement.  *See Zuver*, 153 Wn.2d at 306 ("the key inquiry for … procedural unconscionability is whether [a party] lacked meaningful choice").  The arbitration agreement was not "hidden in a maze of fine print," *id.* at 304, but rather was prominently featured in bolded type and easy-to-understand terms.  *See, e.g.*, *Signavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007); *Hauenstein*, 2007 WL 2404624, at *4.  Plaintiffs cannot contend that they were forced to use Amazon's seller services or that they were caught unawares or that the arbitration agreement in the BSA is procedurally unconscionable in any way.[13]

Nor can Plaintiffs plausibly claim the arbitration agreement is substantively unconscionable, *i.e.*, that it is so one-sided as to be "monstrously harsh" or "shocking to the conscience." *Hauenstein*, 2007 WL 2404624, at *5 (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995)); *see also Satomi Owners*, 167 Wn.2d at 816.  Amazon's arbitration agreement allows Plaintiffs to recover the same relief on their individual claims as would

---

[13] It also makes no difference whether or not each Plaintiff actually read the terms of the BSA and the arbitration agreement, because the law conclusively presumes that they did so.  *Signavong*, 2007 WL 1813845, at *3; *Tjart v. Smith*, 107 Wn. App. 885, 896 (2001); *Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388-89 (1993).

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 19

be available in court, including statutory damages and attorneys' fees (while Amazon disclaims rights to seek fees, except for claims that are deemed frivolous).  BSA ¶ 18. Plaintiffs can arbitrate their claims for free—they pay no arbitration costs or arbitrator fees for any claims up to $10,000—and can choose to arbitrate based on written submissions, in a telephonic hearing, or in person at a location convenient to them.  *Id.*  The agreement is also mutual—Amazon agreed to arbitrate its claims with Plaintiffs.  *Id.*  These provisions defeat any claim of substantive unconscionability.  *Compare Gandee v. LDL Freedom Enter., Inc.*, 176 Wn.2d 598, 603-09 (2013) (finding arbitration agreement substantively unconscionable because it contained a one-sided "loser pays" provision for all costs and fees, required arbitration to take place in California, and precluded claims not filed within 30 days).  The arbitration agreement in the BSA provides fair and efficient dispute resolution, which is what the FAA encourages in expressing a strong federal policy in favor of arbitration.  Indeed, finding Amazon's arbitration agreement to be unconscionable would single out arbitration itself as unconscionable, which the FAA prohibits.  *Concepcion*, 131 S. Ct. at 1747-48 (courts may not refuse to enforce arbitration agreements based on the attributes of arbitration "to facilitate streamlined proceedings").

### D.      The Court Should Compel Arbitration and Stay This Action.

The FAA expressly provides that a party seeking to compel arbitration may seek to "stay … the action until such arbitration has been had in accordance with the terms of the agreement," and requires that, if the Court determines arbitration is appropriate, it "shall" stay the action as requested.  9 U.S.C. § 3.  This provision is designed to effectuate the intent of the FAA that, when arbitration is called for, it should be compelled promptly and without delays of intervening appeals.  *See id.* § 16 (allowing a one-way appellate right, *i.e.*, the party seeking to compel arbitration can appeal if a district court denies the motion, but a party opposing arbitration cannot appeal if the court grants the motion); *see also id.* § 4. Accordingly, the Court here should compel Plaintiffs to arbitrate their claims and should stay all further proceedings in this case.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

IV.    CONCLUSION

2     For the foregoing reasons, Amazon respectfully requests that the Court stay this

3 action in its entirety and direct Plaintiffs to submit their claims to binding arbitration on an

4 individualized basis pursuant to the terms their agreements with Amazon.

5     DATED this 10th day of May, 2013.

6

7                              DAVIS WRIGHT TREMAINE LLP

8                              By:    s/ James C. Grant
                                      James C. Grant, WSBA #14358
9                                     John A. Goldmark, WSBA #40980
                                      1201 Third Avenue, Suite 2200
10                                    Seattle, Washington  98101-3045
                                      Telephone:  (206) 622-3150
11                                    Facsimile:  (206) 757-7700
                                      Email:  jamesgrant@dwt.com
12                                            johngoldmark@dwt.com

13

14                             *Attorneys for Defendant*

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 21

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on May 10, 2013, I caused to be electronically filed the

3   foregoing document with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to the following plaintiffs' counsel:

5
          Beth E. Terrell:              bterrell@tmdwlaw.com
6          Britton D. Monts:            bmonts@themontsfirm.com
          Richard E. Norman            rnorman@crowleynorman.com
7          R. Martin Weber, Jr.         mweber@crowleynorman.com

8          DATED May 10, 2013.

9                                        s/James C. Grant
                                         James C. Grant, WSBA #26369
10                                        Davis Wright Tremaine LLP
                                         1201 Third Avenue, Suite 2200
11                                        Seattle, WA  98101-3045
                                         Telephone: (206) 622-3150
12                                        Fax: (206) 757-7700
                                         E-mail: jamesgrant@dwt.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO COMPEL ARBITRATION
(No. C13-0480-MJP) – 22